IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE:

TERRI LYNN WHITMAN                              Case No. 11-20343
                                                Chapter 7
       Debtor.


TERRI LYNN WHITMAN,

       Plaintiff,

v.                                              A.P. No. _____

WELLS FARGO BANK, NA d/b/a
WELLS FARGO HOME MORTGAGE,
INC., a corporation, and WYNDHAM
CAPITAL MORTGAGE, INC., a corporation,

       Defendants.


## COMPLAINT

### INTRODUCTION

1. This action arises principally out of the illegal origination tactics of the Wachovia Mortgage Corporation ("Wachovia"), and its correspondent broker, Wyndham Capital Mortgage, Inc. ("Wyndham"). Wachovia was a subprime mortgage originator, responsible for collecting the payments on home loans, often made through predatory lending practices.[1] The lender has a consistent and aggressive practice, of agreements with originating front lenders to originate loans accomplished with bogus appraisals.

---

[1] See HUD-Treasury Nat'l Predatory Lending Task Force, Joint Rpt: Curbing Predatory Home Mrtg. Lending, (visited Sept. 30, 2002) http://www.hud.gov/library/bookshelf18/pressrel/pr00-142.html Brokers and finance companies solicit unsophisticated borrowers with equity in their homes and persuade them into mortgage loans with excessive fees and junk charges.

2. The named Plaintiff was victimized by Wachovia's pattern and practice. After Wachovia acquired the Plaintiff's rights, they did not disclose the bogus originated loan and had Plaintiff sign a document that purports to waive all of Plaintiff's rights.

**PARTIES**

3. The Plaintiff resides at HC 80, Box 78, Ripley, West Virginia, 25271. Plaintiff was transferred the home and the indebtedness in the divorce from her former husband.

4. **Lender:** Wachovia was a subprime mortgage originator who was responsible for originating the loan from a borrower, but who does not hold the actual loan. It did business at 201 S. College Street, Charlotte, North Carolina, 28288-1089 and is now owned and an affiliate of the Defendant Wells Fargo, NA d/b/a Wells Fargo Home Mortgage, Inc. ("Wells Fargo").

5. **Broker:** The Defendant Wyndham with a principal address of 4539 Hedgemore Drive, Suite 110, Charlotte, North Carolina, 28209 (and doing business at 12701 Fair Lakes Circle, Suite 101, Fairfax, Virginia, 22033-4910) has a regular business relationship with the Defendant Wells Fargo.

6. **Holder/Servicer:** The Defendant Wells Fargo, NA d/b/a Wells Fargo Home Mortgage, Inc. is a mortgage lender doing business at 1 Home Campus – MAC X 140 1-06T, Des Moines, Iowa, 50328.

**STATEMENT OF FACTS**

7. The Plaintiff purchased the home for $68,000.00 in 1996, completed on a 2.5 acre lot provided by her parents.

8. Her former husband, through the Defendants, refinanced the home.

9. **2004 Loan Origination:** On or about August 4, 2004, the broker Wyndham placed Plaintiff and her former husband into two loans, the primary one with an affiliate of Defendant Wells Fargo.

10. (a) The broker and appraiser worked together on an appraisal of the Plaintiff's home.

(b) The appraiser appraised the Plaintiff's home at $163,000.00. Plaintiff did not learn of the inflated valuation until 2011.

(c) The actual market value of the home at that time was at or about $110,000.00.

11. **2006 Loan Origination:** In early 2006, Plaintiff was again solicited by the Defendant broker working in a business relationship with the lender.

12. (a) The Defendant lender/broker then contacted the same cooperating appraiser.

(b) Upon information and belief, the appraiser valued the Plaintiff's home at or about $164,000.00.

(c) At that time, the home had a market value of $115,500.00.

(d) Had the house not had the garage located on the neighbor's property, it would have had a market value of only $123.500.00 at that time.

13. On neither occasion did the appraiser look at the lot in detail to ascertain that part of the garage is on another's real property.

14. (a) The lender and broker originated two loans, one of $147,000.00 and a second of $15,000.000 secured by Plaintiff's home.

(b) The Defendant lender intentionally relied on the said bogus appraisal.

15. **Discovery:** The Plaintiff did not discover the inflated loan valuation and bogus appraisal until 2011.

## COUNT I – BREACH OF FIDUCIARY DUTY – BROKER

16.  The Plaintiff incorporates all previous paragraphs by reference.

17.  The broker owed a fiduciary duty to the Plaintiff as a broker (a) to disclose the existence and terms of the broker relationship; (b) to act on her behalf and to obtain and pursue loans with the best available terms; (c) to provide her a written agreement disclosing the services to be performed and the total cost thereof; (d) to provide her notice and an opportunity to cancel the broker agreement; and (d) to disclose to her the range of options and risks associated with her loan.

18.  The Defendant broker breached its fiduciary duty to the Plaintiff by engaging in the following activities (this list is not necessarily exhaustive):

(a)  Failing to disclose adequately, and in compliance with West Virginia law, the nature and terms of the agreement between the Plaintiff and the Defendant broker;

(b)  Failing to seek out and obtain credit for the Plaintiff on the best terms available;

(c)  Persuading the Plaintiffs to accept a higher interest rate – without her knowledge – in exchange for a secret kickback from the lender; and

(d)  Charging the Plaintiff excessive broker fees.

19.  The Plaintiff was injured by the broker's breach of its fiduciary duty when she incurred excessive fees and costs and was induced into a loan agreement on terms favorable to the broker and lenders without regard to terms more favorable to the Plaintiff that may have been obtained from other lenders.

WHEREFORE, the Plaintiff respectfully requests the following relief:

(a)  A declaration that the broker had a fiduciary duty to the Plaintiff;

(b) A declaration that the broker breached its fiduciary duty to the Plaintiff by, *inter alia*, (i) failing to disclose adequately, and consistent with West Virginia law, the nature and terms of the agreement between the Plaintiff and the Defendant broker; (ii) failing to seek out and obtain credit for the Plaintiff on the best terms available; (iii) charging the Plaintiff excessive broker fees; (iv) suppressing certain terms of the loan agreement; and (v) arranging for a fraudulent appraisal that resulted in indebtedness that exceeds the market value of the Plaintiff's home

(c) A declaration that by breaching their fiduciary duty to the Plaintiff, the broker engaged in unconscionable conduct in the inducement of the loan agreement, and the loan is therefore void and unenforceable pursuant to *West Virginia Code* § 46A-2-121;

(d) Actual and punitive damages;

(e) Reasonable attorney fees and the costs of this litigation; and

(f) Such other relief as this Court deems equitable and just.

## COUNT II – UNCONSCIONABLE INDUCEMENT – LENDER/HOLDER

20. The Plaintiff incorporates all previous paragraphs by reference.

21. The Defendant lender is a large lender that have engaged in a pattern of home equity skimming and predatory lending practices to make unfair loans in order to transfer the home equity from borrowers to the lenders. Said Defendant has a history of enforcing predatory loans based on fraudulent appraisals.

22. The loan issued by the Defendant left the Plaintiff worse off than she was with her existing loans, and prevents the Plaintiff from selling her home.

23. The loan agreement contained unfair terms, which constituted an unfair surprise to the Plaintiff:

(a) An indebtedness that far exceeds the value of the Plaintiff's home.

24. The loans issued to the Plaintiff were unconscionable, under all circumstances alleged, at the time of was made and/or were induced by unconscionable conduct, and therefore were unenforceable under *West Virginia Code* § 46A-2-121.

WHEREFORE, the Plaintiff respectfully prays for the following relief:

(a) Actual damages;

(b) A civil penalty of $4,400.00, pursuant to *West Virginia Code* §§ 46A-5-101(1) & 106;

(c) The Court declare that the Defendants' practice of including finance charges in "principal" impermissibly compounds interest upon interest in violation of West Virginia law;

(d) The Court declare that the loan agreement is void and unenforceable pursuant to *West Virginia Code* § 46A-5-101(2);

(e) Reasonable attorney fees and the cost of this litigation pursuant to *West Virginia Code* § 46A-5-104; and

(f) Such other relief as the Court may deem equitable and just.

## COUNT III – FRAUD AND JOINT VENTURE

25. The Plaintiff incorporates all previous paragraphs by reference.

26. The Defendant lender/holder relied on an appraisal indicating that the market value of the Plaintiff's property was approximately $164,000.00. This appraisal was intentionally inflated.

27. In fact, the market value was substantially less, as alleged.

28. The lender intentionally participated in a venture with an appraiser to misrepresent the market value of the Plaintiff's property for the purpose of inducing the Plaintiff into the contract.

29. The lender intentionally relied upon on inflated valuation of the market value of the Plaintiff's home and to lock Plaintiff into a loan.

30. The Defendants' suppression of the true market value and its practice of inflated valuation of the home were intentional and material.

31. The Plaintiff reasonably relied upon her belief of the adequacy of the value of the home loan origination process when entering into the loan agreement.

32. The Plaintiff was damaged by the Defendant's actions.

WHEREFORE, the Plaintiff respectfully prays for the following relief:

(a) Appropriate equitable relief;

(b) Actual and punitive damages;

(c) Reasonable attorney's fees and the cost of this litigation; and

(e) Such other relief as the Court deems equitable and just.

### COUNT IV – JOINT VENTURE, CONSPIRACY, AND AGENCY

33. The Plaintiff incorporates all previous paragraphs by reference.

34. The Defendant had a pecuniary interest in the loan transaction with the Plaintiff.

35. The Defendant combined its money, skill, and knowledge to carry out the enterprise – that is the loan to the Plaintiff.

36. On information and belief, Defendant had an agreement – written, oral, constructive, or otherwise – with one another to originated the loan.

37. The acts of the Defendant, hereinbefore alleged, were done in furtherance of a joint venture in which each of the acts of the Defendant was pursued with a joint purpose.

38. The Defendant conspired to commit the unlawful acts or lawful acts by unlawful means, hereinbefore alleged, and each is responsible for all acts alleged herein.

39. The Defendant's acts were conducted as a part of the principal-agency relationship between the Defendant.

                TERRI LYNN WHITMAN
                By Counsel


_/s/ Daniel F. Hedges_
DANIEL F. HEDGES (WVSB# 1660)
Attorney At Law
8 Hale Street
Charleston, WV 25301
(304) 346-0361
*Counsel for Plaintiff*